Date signed October 12, 2010



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

| | | |
|---|---|---|
| In Re: | * | |
| Henry J. Schubert | * | Case No.    08-17653-DK |
| Virgie Schubert, | * | Chapter     7 |
| Debtors | * | |
| ************************************ | * | |
| Sean C. Logan, | * | |
| | * | |
| Plaintiff | * | |
| vs. | * | Adversary   No. 09-0031 |
| Citi Mortgage, Inc., et al, | * | |
| | * | |
| Defendants | * | |

### MEMORANDUM OF DECISION

Before the court is the adversary proceeding by the plaintiff Chapter 7 Trustee (the "Trustee") against the two entities, Citi Mortgage, Inc. ("CitiMortgage") and Citi Bank, NA ("CitiBank") holding secured claims against the proceeds of the sale of Debtors' residential property (the "Property"). The Trustee's Amended Complaint seeks avoidance of CitiMortgage's lien in the Property and a determination of CitiBank's lien priority. The court held a trial on October 14, 2009, at which it made a preliminary finding that the deed of trust recorded by CitiMortgage shortly before the bankruptcy case was filed was avoidable as a preference pursuant

to Section 547 of the Bankruptcy Code.  The court left open the determination of whether CitiMortgage was entitled to invoke the doctrine of equitable subrogation to defeat the Trustee's ability to distribute the liquidated proceeds of the Property pro rata to all unsecured creditors.  The parties filed post-trial briefs on the applicability of equitable subrogation.

The transactional facts relied upon by the Trustee at trial have never been the subject of dispute.[1]  The Debtors acquired their residence in February 1993.  In August 2004, in connection with a refinance of their then-existing home loan, they executed a promissory note, secured by a deed of trust in favor of Principal Residential Mortgage, Inc. ("Principal").  Principal was merged into CitiMortgage in December 2004.  At that time, CitiMortgage acquired the note and deed of trust that existed in favor of Principal (the "Principal Note" and the "Principal Deed of Trust").

On April 19, 2005, Debtors took out a home equity line of credit with CitiBank in the principal sum of $40,000 (the "Home Equity Loan").  CitiBank recorded the deed of trust in connection with the Home Equity Loan in the land records on May 3, 2005.  The Debtors modified the Home Equity Loan on February 27, 2006 with an increase to $57,000 and the modification agreement was filed in the land records on April 4, 2006.

Thereafter, on February 11, 2008, Debtors refinanced the Principal Note and Deed of Trust. CitiMortgage was the lender.[2]  CitiMortgage filed a Certificate of Satisfaction in the land records on March 20, 2008 providing that the Principal Note had been satisfied and deed of trust released.

---

[1] The Trustee's Pretrial Statement filed September 14, 2009 contained a stipulation of facts.

[2] According to the pleadings, the Debtors did not take equity out of the residence by receiving funds in excess of the balance of the Principal Note and applicable refinancing fees. This is significant because both in statute and equity, the lien priority is only preserved to the extent of the amount secured by the deed of trust holding priority at the time of refinance.  *See e.g.,* MD. CODE ANN. REAL PROP. § 7-111(b); *G.E. Capital Mortgage Services, Inc. v. Levenson*, 338 Md. 227, 657 A.2d 1170 (1995); *Bennett v. Westfall*, 186 Md. 148, 152, 46 A.2d 358, 360 (1946).

CitiMortgage then filed the new deed of trust in the land records on April 11, 2008 (the "Refinanced Deed of Trust").  The Debtors filed this bankruptcy case on June 9, 2008, which date was 119 days after the promissory note to CitiMortgage was signed and 59 days after recordation of the Refinanced Deed of Trust.

Since the filing of the bankruptcy case, the Trustee (with the consent of Debtors, CitiMortgage and CitiBank) sold the Property and is holding in his trust account the $165,789.63 proceeds of the sale pending the resolution of this adversary proceeding.[3]

By this adversary proceeding, the Trustee is seeking to avoid the lien of CitiMortgage under the Refinance Deed of Trust, which would cause CitiBank to hold the first and only secured lien on the sale proceeds.  The proceeds exceeding the value of CitiBank's secured claim would then be distributed to allowed priority and general unsecured creditors in accordance with the priority scheme of the Bankruptcy Code.  *See* 11 U.S.C. § 507.

The Amended Complaint seeks avoidance under alternative theories.  Count I alleges that the avoidance of CitiMortgage's lien is proper pursuant to the trustee's "strong arm" powers of Section 544 of the Bankruptcy Code.[4]  Count II requests avoidance of the lien as a preferential

---

[3] The two defendants, CitiMortgage and CitiBank are represented by the same counsel in these proceedings.  CitiMortgage has stated in at least one pleading before the court that it has consented to the full payment of the Debtors' indebtedness to CitiBank from the proceeds of the Property.  This agreement would be consistent with the status of the parties' liens were there no bankruptcy case ever filed and no assertion of equitable subrogation.  But it is contrary to the current position by CitiMortgage that would place its lien in priority to that of CitiBank.  Nevertheless, the court in this case will not disturb such independent agreement between the parties, as it does not adversely affect the rights of others.

[4] The Trustee effectively withdrew Count I when he conceded at hearing that he had not put on any evidence to prove a cause of action under Section 544.  This court agrees and further finds that under the facts alleged in the Amended Complaint, such relief would not be available.  Section 544 provides in part:
  (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred

3

transfer. Count III is brought for recovery of property pursuant to Section 550 whereby the Trustee seeks to require CitiMortgage to turnover the value of the lien ($150,000 plus interest, according to the Trustee) to the estate.[5] Count IV seeks declaratory relief establishing the validity, priority and extent of liens against the Property.

As previously stated, at the conclusion of the trial, the court made a preliminary finding in favor of the Trustee on Count II, stating that CitiMortgage's recordation of its lien on April 11, 2008 constituted a preferential transfer as intended by Section 547. A preferential transfer is defined in the Bankruptcy Code as follows:

> [A]ny transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;

---

> by the debtor that is voidable by—
> . . .
>> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
> (b) (1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502 (e) of this title.

11 U.S.C. § 544 (in part). CitiMortgage recorded its deed of trust prior to the filing of the bankruptcy case and the creation of the trustee as a fictional bona fide purchaser. Accordingly, the cause action under Section 544 must fail.

[5] Section 550(a), with exceptions and limitations, provides that to the extent a transfer is avoided under another section of the Code specified therein, that the trustee may recover the property transferred <u>or</u> the value of such property.

4

  (4) made—
   (A) on or within 90 days before the date of the filing of the petition;
   or
   (B) between ninety days and one year before the date of the filing of
   the petition, if such creditor at the time of such transfer was an
   insider; and
  (5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under chapter 7 of this title;
   (B) the transfer had not been made; and
   (C) such creditor received payment of such debt to the extent
   provided by the provisions of this title.

11. U.S.C. §547(b).  The court concluded, based upon the facts presented, that the recordation of the deed of trust creating the lien to secure the refinancing of the original note, was a transfer to or for the benefit of a creditor ((b)(1)) and on account of an antecedent debt (as the recordation occurred more than 30 days after the money was advanced to pay off the original note)((b)(2)).[6] CitiMortgage did not dispute or introduce evidence to rebut the presumption that the Debtors were insolvent at the time of the transfer ((b)(3)) and it was demonstrated that the recordation occurred within 90 days prior to the petition date ((b)(4)).  Finally, the evidence demonstrated that the transfer allowed CitiMortgage to receive more than it would receive as a distribution than if the estate were liquidated and CitiMortgage shared in the proceeds as an unsecured creditor ((b)(5)).

  In light of the court's finding that the recordation of CitiMortgage's Refinanced Deed of Trust constituted a preferential transfer, the court must determine whether such transfer is avoidable pursuant to Section 547(b).  While there exist statutory exceptions[7] to the ability of a trustee to

---

[6] Under Section 547(e) the date of the transfer for purposes of application of subsection (b)(4) as to real property is the date upon which a bona fide purchaser could not acquire a superior interest.  Under Maryland law, as to a transfer by deed or deed of trust, the date of recordation of the deed is the applicable date.  MD. CODE ANN. REAL PROP. § 3-203.

[7] Section 547(c) provides the exceptions to the trustee's power to avoid, including for reasons that the transfer was intended to be or was a contemporaneous exchange, the debt was incurred by the debtor in the ordinary course of business, the transfer was a security interest given in exchange for new value and timely perfected, domestic support obligations, payment of certain debts that fall below enunciated thresholds.

avoid a preferential transfer, none of those apply herein. By perfecting its lien in the Property more than 30 days after the note was signed and the loan was made to Debtors, CitiMortgage is unable to avail itself of the "enabling loan"[8] exception to avoidance specifically provided to exempt from avoidance real estate transactions merely because of the routine lapse in time between the execution of the note and the deed of trust and the recordation of that deed of trust.

      CitiMortgage asserts that notwithstanding the Trustee's entitlement to avoid the preferential transfer and remove CitiMortgage's lien from the proceeds of the Property, the doctrine of equitable subrogation should be applied and it should be awarded the proceeds of the sale of the Property to the extent of its outstanding balance on the Refinanced Note. Equitable subrogation would place CitiMortgage in the lien priority position it held prior to the refinancing of the Principal Note. The Trustee opposes the defense of equitable subrogation and avers that its application to the instant facts is improper because (1) the doctrine cannot be invoked where the refinancing party is the same party who held the original deed of trust, (2) that equitable subrogation is inapposite where the prior lien was released prior to recordation of the subsequent lien; or (3) that there is no evidence that CitiMortgage intended to maintain its priority at the closing of the refinance. The Trustee does not

---

[8] Section 547(c)(3) provides that the trustee may not avoid a transfer under this section—
(3) that creates a security interest in property acquired by the debtor—
    (A) to the extent such security interest secures new value that was—
        (i) given at or after the signing of a security agreement that contains a description of such property as collateral;
        (ii) given by or on behalf of the secured party under such agreement;
        (iii) given to enable the debtor to acquire such property; and
        (iv) in fact used by the debtor to acquire such property; and
    (B) that is perfected on or before 30 days after the debtor receives possession of such property.
11 U.S.C. § 547(c)(3).

provide evidence of harm visited upon other creditors of the estate by application of equitable subrogation, but merely seeks to take advantage of the rights provided by Section 547.

The doctrine of equitable subrogation is an established principle in Maryland jurisprudence and applicable in a bankruptcy case.[9] "That doctrine was declared by this court [in earlier caselaw] to be a peculiar feature of equity not founded on contract but having its origin in a sense of natural justice." *Wallace v. Jones*, 110 Md. 143, 72 A. 769, 769-70 (1909). "'So soon as a surety pays the debt of a principal debtor, equity subrogates him to the place of the creditor and gives him every right, lien, and security to which the creditor could have resorted for the payment of his debt.'" *Id.* at 770 (citing *Orem v. Wrightson*, 51 Md. 43, 34 Am. Rep. 286 (1879)).

The general parameters of equitable subrogation are set forth in one treatise as follows:

> "Equitable" or "legal" subrogation, since it is a broad doctrine, is given a liberal application. It applies where one who has discharged the debt of another may, under certain circumstances, succeed to the rights and position of the satisfied creditor if: (1) payment must have been made by the subrogee to protect his or her own interest; (2) the subrogee must not have acted as a volunteer; (3) the debt paid must have been one for which the subrogee was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not work any injustice to the rights of others."

73 Am.Jur.2d, *Subrogation* § 5 (2001).

Equitable subrogation has often been applied in cases in which lenders have refinanced mortgages. In such cases, the court applies equitable subrogation under its equity power to correct technical document errors to honor evidence of a lender's intent to refinance a loan while equitably subrogated to the original loan date; and importantly because intervening creditors had notice of the earlier loan, and so are not prejudiced by equitable subrogation, but otherwise would be unjustly enriched. *See*, *e.g., Bennett v. Westfall*, 186 Md. 148, 152, 46 A.2d 358, 360 (1946)(mortgagee who

---

[9] In *In re Houston*, 409 B.R. 799, 807 (Bankr. D.S.C. 2009), the court reiterated that equitable subrogation, a state law doctrine, is an available remedy in bankruptcy courts. *See also Vieira v. Pearce, (In re Pearce)*, 236 B.R. 261, 264 (Bankr. S.D. Ill. 1999).

released prior mortgage on property and thereafter recorded a new mortgage under mistake of fact that there was no mortgagee subsequent in priority to the first, was entitled to be subrogated to the date of recordation of his original mortgage).  In short, subrogation "is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one, who injustice, equity and good conscience, should pay it.  It is an appropriate means of preventing unjust enrichment." *Hill v. Cross Country Settlements*, 402 Md. 281, 312, 936 A.2d 343, 362 (2007)(citations omitted).  Accordingly, the Bankruptcy Court, as a court of equity, favors the liberal application of such principle where the facts support it and such application causes no harm to an intervening creditor.[10]

In the instant case, the court must decide whether CitiMortgage should be, by equitable subrogation, placed in the position it held prior to the refinance transaction.  Were CitiMortgage to have timely recorded its Refinanced Deed of Trust in the land records within 30 days of the execution of the note and deed of trust or done so in addition to documenting the transaction in accordance with MD. CODE ANN. REAL PROP. § 7-111, it would not be subject to preference avoidance.  Trustee herein alludes to CitiMortgages's failure to avail itself of this opportunity to timely perfect its lien as grounds for defeating equitable subrogation.  This insinuation, of course, is inaccurate because if CitiMortgage had timely recorded its lien, there would be no preference and no need for CitiMortgage to be raising the defense.  Clearly, equitable subrogation was intended to bridge the gap when negligence or mistake of the party seeking subrogation prevents their rights from being otherwise asserted.

---

[10] The Trustee is not herein considered an intervening lienholder.  Had CitiMortgage perfected its lien *after* the filing of the bankruptcy petition, Section 544 would have operated to give the Trustee that intervening lienholder status in the transaction.  However, Section 547 does not reach back 90 days and insert the trustee into the transaction as a lienholder.  It merely allows for the avoidance of transfers that occur during that preference period under the rules set forth therein.

8

The Trustee's post-trial brief primarily focuses on three points raised in opposition to equitable subrogation. The first theory is that where the lender in the refinance transaction is the same entity as the existing deed of trust holder, equitable subrogation is unavailable. In support of this argument, the Trustee first cites to *G.E. Capital Mortgage Services, Inc. v. Levenson*, 338 Md. 227, 657 A.2d 1170 (1995). In *G.E. Capital*, the issue arose after foreclosure of real property where the holder of judgment liens sought a declaration that the judgment liens held priority over the lien created during the refinancing of the property and the interest held by the purchaser at foreclosure on the refinanced deed of trust. The Court held that equitable subrogation would operate to protect the refinancing lender in the refinance transaction where it was unaware of judgment liens that had attached to the borrower's real property after the first mortgage was recorded and prior to the refinance transaction (during which the new lender was unaware of the judgment liens).[11] Therefore, the purchasing party (which was the same entity as the refinancing lender) held those same rights and would hold the priority lien on the property with the other junior liens having been extinguished at foreclosure.

The Trustee contends that the body of law on equitable subrogation and the Maryland Court of Appeals' discussion and application of the equitable subrogation in *G.E. Capital* limits the doctrine of equitable subrogation in refinancing transactions to the instances where the refinancing lender is a distinct entity from the original noteholder. The Trustee directs this court to specific paragraphs in *G.E. Capital* such as the following wherein the Court of Appeals wrote: "The great majority of case law holds that one who pays the mortgage of <u>another</u> and takes a new mortgage as security will be subrogated to the rights of the first mortgage as against any intervening lienholder."

---

[11] In *G.E. Capital*, the refinancing lender loaned the borrower more than twice as much as the original loan on the property that was being refinanced. Accordingly, the Court explained that the new lender was only subrogated to the first mortgagee's position to the extent of the balance of the payoff amount of the first note.

9

*Id.* at 237-38, 657 A.2d at 1175 (emphasis added).  The Trustee then argues, without support, that the reason the doctrine is so limited is because a party refinancing its own note is less in need of protection than a third party.  Trustee writes: "[H]ad CitiMortgage not filed its termination, it would have maintained its original lien position.  In doing so, it may not have exercised its control to its benefit, but there is no dispute that it exercised control.  The fact that it possessed such control demonstrates why it did not need the protection of the doctrine of equitable subrogation." *Trustee's Post Trial Brief*, at p.6.

The Court disagrees with the Trustee's argument.  Equitable subrogation was not intended to apply only to parties who are injured by another entities' error or omission, or themselves without negligence.  *See e.g., Finance Co. of America v. U.S. Fidelity & Guaranty Co.*, 277 Md. 177, 180-87, 353 A.2d 249, 250-255 (holding that a bonding company that pays for completion of a contract because the contractor defaults, under the doctrine of equitable subrogation stands in the contractors' place as of the date of the contract notwithstanding that a bonding company did or did not conform to UCC requirements).  These statements that exist in various Maryland cases wherein a reference is made to the subrogor being a different entity than the subrogee are all cases in which those parties were separate entities and therefore the courts were not addressing the issue in the same framework.  The language should be interpreted as being inclusive– that a transaction between unrelated parties can lead to application of equitable subrogation– rather than exclusive - that a single entity is excluded from invoking the equitable remedy.  Such reading of the law is consistent with findings of justice and fairness that led to the development of the doctrine. *See Bennett v. Westfall*, 186 Md. at 148; 46 A.2d at 358 (the party seeking subrogation was the same party as held the original lien).[12]

---

[12] It is also consistent with a statement made by the United States District Court in *Rinn v. First Union National Bank of Maryland*, wherein it cited the Maryland Court of Special

The court next turns to the Trustee's argument as to whether the filing by CitiMortgage of the certificate of satisfaction in the land records prior to the recordation of the new lien defeats its entitlement to equitable subrogation. The Trustee argues that it does because CitiMortgage cannot step into its own shoes if it has already released the lien to which it seeks to be subrogated in priority.

This issue was recently addressed in a memorandum issued by this Court (Catliota, J.) *Taylor v. Furnace Assocs., Inc., et al (In re Taylor)*, 2008 WL 4225761 (Bankr. D. Md.). To the argument that equitable subrogation should be denied because of the gap in time between the release of the first lien and the recordation of the refinancing lien, the Court responded: "It is clear, however, that in Maryland equitable subrogation occurs at the time when the second mortgagee pays off the first lien. . . . The definition does not require that the new lien must be filed before the prior lien is released." *Id.* at *8 (citing *G.E. Capital,* 657 A.2d at 1175).

The case of *Rinn v. First Union Nat'l Bank of Maryland*, 176 B.R. 401 (D.Md. 1995) case is instructive on this point as well, not only because of the lengthy analysis it gives to the evolution of the doctrine in Maryland, but because the Court focused on the concept of when equitable subrogation arises and the intent of the parties at the time of the transaction which created the right.

In *Rinn*, the United States District Court faced the issue on appeal from the bankruptcy court which had granted equitable subrogation to the bank. The bank did not achieve perfection of its lien on debtors' inventory and receivables until a period within 90 days prior to the filing of the petition. The bank sought to be equitably subrogated and to step into the shoes of the prior lender

---

Appeals stating that the doctrine had been expanded to situations where the initial and refinancing lenders were not the same. 176 B.R. 401, 409 (D.Md. 1995) (citing *Levenson v. Capital Mortgage*, 101 Md. App. 122, 643 A.2d 505, 510 (1994)(overruled on other grounds). Obviously the doctrine cannot be expanded to include distinct lenders, unless it originally encompassed the same lenders.

which had held a properly perfected interest in the assets prior to the refinance. The bank had a letter of intent from the borrowers stating that it would be granted a first priority security interest in the security and receivables, but the proper documents had not been timely executed prior to the filing of the bankruptcy cases. The District Court affirmed the bankruptcy court in finding that the bank was entitled to subrogation based on the parties' agreement that it would hold a first priority perfected interest in the assets and that the trustee had failed to establish such gross negligence or intervening equities that would prevent such application.

Equitable subrogation is intended to permit the lender to occupy the same lien position as the one that secured the satisfied obligation. The court should focus on the transaction and intent of the parties at the time of the transaction and then whether allowing equitable subrogation to overcome the deficiencies in the subsequent performance would cause harm to other parties with rights in the property in question.[13] Provided that no other creditors' interests were prejudiced by the errors, the Certificate of Satisfaction filed 22 days prior to recordation of the Refinanced Deed of Trust is the precise type of negligence which equitable subrogation is intended to remedy, and does not defeat equitable subrogation. CitiMortgage is not requesting to be subrogated to the position it held after the second loan and prior to the recordation of the refinanced deed of trust. It is requesting to be equitably subrogated to the position it held immediately prior to payment of its first note. The transactional fact of the filing of the Certificate of Satisfaction which occurred after that point in time is inconsequential to this analysis unless there had been another party who had

---

[13] The court in *Rinn* made reference to his issue in one of its citations on the right of subrogation:
> "This principle will be applied even where the record shows a release of the satisfied encumbrance, since the lien so satisfied will be renewed for the benefit of the party satisfying the same; where there has been no gross negligence and where justice requires that it be done."

*Rinn*, 176 B.R. at 409 (quoting 73 Am.Jur.2d, *Subrogation* § 92 at 655 (1974)).

12

relied on that release to its detriment.

Finally, the Trustee avers that CitiMortgage did not intend the refinance transaction as a modification or assignment of the original note, and as such cannot avail itself of an equitable subrogation argument. Essentially this is another version of the Trustee's second argument regarding the significance of the Certificate of Satisfaction, with a new point that the release was not a mistake, but intended because Citi Mortgage never intended to hold a first position deed of trust after the refinance. The Trustee argues that if it had, it would have done so by availing itself of the provisions of the Maryland Code which provide for assignment or modification of a note. The Trustee focuses on a discussion of earlier cases set forth in the opinion in *Rinn* and from that states that "the principle gleaned from the *Rinn* opinion is that equitable subrogation will not protect a refinancing lender from third parties that perfect security in the collateral during the time subsequent to the release of the original lender's security and before the refinancing lender perfects."

Despite the Trustee's averment that applying equitable subrogation "when CitiMortgage has been thwarted by its own actions is in no way equitable,"[14] the caselaw is well supported that negligence of a party is in no way a prohibition to application of equitable subrogation. Indeed in the *Rinn* decision, the Court is clear that only "gross or 'inexcusable' negligence" will rise to the level of defeating the right to equitable subrogation where the act does not prejudice another person. *Id.* at 411.

After factual analysis, the equities here lie with CitiMortgage and not with the Trustee. CitiMortgage is entitled to equitable subrogation and therefore for purposes of determining right to proceeds of the Sale of Property, the date of recordation of the Refinanced Deed of Trust will be

---

[14] *Trustee's Post-Trial Brief*, at p.9.

13

considered to be that of the Principal Loan. CitiBank was aware that its lien securing the Home Equity Loan was subordinate to the deed of trust securing the primary mortgage deed of trust and the filing of the Certificate of Satisfaction and subsequent recordation of the Refinanced Deed of Trust did not worsen CitiBank's position with respect to its security interest.

Furthermore, the avoidance of the preferential transfer under Sections 547 and 550 to the extent the lien is avoided, does not erase the original recordation and the notice it provided to other creditors. The court rejects any argument that because avoidance of the preferential transfer, Citimortgage would hold an unrecorded lien which the Trustee is entitled to avoid under the strong-arm powers of Section 544 which essentially serve to cut off unperfected liens and security interests at the time of the bankruptcy petition. The existence of CitiMortgage's interest in the Property would still be apparent from the land records despite avoidance and therefore provides notice[15] sufficient to defeat the right to avoid arising under Section 544.[16]

Upon a determination that a creditor situated as is CitiMortgage in this case, is entitled to equitable subrogation, some courts have expressed the outcome as a denial of avoidance of the refinanced security interest. *See Rinn*, 176 B.R. at 416. Where, as in the case now before this court, the Refinanced Deed of Trust sought to be avoided did not exceed in amount the lien debt to which CitiMortgage is equitably subrogated, that is maybe a correct analytical result. Due to the equitable subrogation, CitiMortgage holds the first priority lien in the Property proceeds and the preferential

---

[15] While a trustee's rights under Section 544 arise under federal bankruptcy law, the status of bona fide purchaser and determination of sufficient notice is a state law issue. *See In re Houston*, 409 B.R. 799, 805-06 (Bankr. D.S.C. 2009).

[16] Contrast *Chase Manhattan Bank, USA, N.A. v. Taxel (In re Deuel)*, 594 F.3d 1073, 1079-80 (9th Cir. 2010), wherein the lender had filed the release of the prior mortgage, but failed prepetition to record the new lien. Thus it was held that the trustee, as hypothetical bona fide purchaser, on the date of bankruptcy petition had notice only of the release of the earlier lien, but no notice of the subsequent lien.

Refinanced Deed of Trust did not enable CitiMortgage to receive more than would have been received in a hypothetical chapter 7 in which the refinanced transfer had not been made.  11 U.S.C. § 547(b)(5).

Another theoretical construct leading to the same practical result in this case would be to hold that the Refinanced Deed of Trust is avoided, but Citimortgage holds the rights of the Principal Deed of Trust to which it is equitably subrogated.  Perhaps the latter explanation would be the better theoretical construct if the refinance loan exceeded the amount owed under the Principal Note and Deed of Trust to which CitiMortgage is subrogated.  In that instance, CitiMortgage would only have the interest of the Principal Deed of Trust and would lose the deed of trust lien under the avoided Refinanced Deed of Trust that was for a larger amount of debt.

Upon finding that Defendant CitiMortgage is equitably subrogated to the original lien under the Refinanced Deed of Trust, employing either theoretical approach, the Trustee's demands in the Amended Complaint to receive a turnover from CitiMortgage are denied.  Further as to the Trustee's prayer in Count IV of the Amended Complaint seeking declaratory judgment, the Court declares that CitiMortgage holds the first priority lien upon the proceeds of the sale, subject to the subordination agreement it has consensually made as to the Home Equity Loan, and that the estate holds a title to the proceeds subordinate to the liens imposed by the original Principal Deed of Trust and the lien securing the Home Equity Loan.

The court will enter an order in conformity with this Memorandum.

**End of Decision**